(No. 4253-)

JAMES M. CARTER, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed February 9, 1951.*

CHALMER C. TAYLOR AND WHEDON SLATER, Attorneys for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

214

LANSDEN, J.

Claimant, James M. Carter, seeks to recover for the malpractice of a veterinarian employed by respondent to test claimant's herd of cattle for bovine infectious abortion commonly known as "Bovine Brucellosis" or "Bang's Disease."

The Federal and State Governments cooperate to control and eradicate Bang's Disease, acting through their respective Departments of Agriculture. In Illinois, this program was started as the result of legislation in 1939, later extensively amended in both 1945 and 1949. Ill. Rev. Stat. 1949, Chap. 8, Secs. 134-148a.

Accredited veterinarians are employed and paid by respondent to administer the tests for Bang's Disease to herds of cattle, the owners of which apply therefor to either Department of Agriculture.

Claimant had, prior to 1949, applied for such tests, and, at the time of the occurrence out of which this action arose, his herd was subject to annual testing. Such tests were to be made at claimant's farm near Hudson, McLean County, Illinois.

The test for Bang's Disease consists of the insertion of a blood needle into the jugular vein of a cow, withdrawing a blood sample, placing such sample in a sterile tube, and then sending the tube to a licensed laboratory, where the approved "agglutination test" is completed.

On March 1, 1949, claimant's herd was tested by Dr. G. J. Kruger, one of respondent's veterinarians, and found, after laboratory analysis of blood samples, to be free of Bang's Disease.

However, on April 28, 1949, an assistant to another of respondent's veterinarians, Dr. C. M. Ruck, came to claimant's farm, and informed him that Dr. Ruck would test his herd the next day for both tuberculosis and Bang's Disease. Claimant was requested to have his cattle in his barn when Dr. Ruck arrived.

When Dr. Ruck and his assistant arrived at claimant's farm the next morning, they went directly to the barn, and started the tests in the absence of claimant, who was in his fields working. By the time claimant got to the barn most of the cattle had been tested, and, although claimant informed Dr. Ruck of the recent tests by Dr. Kruger, Dr. Ruck tested the entire herd.

One of the cows tested by Dr. Ruck, subsequent to the arrival of claimant on the scene, was a 3 year old grade Brown Swiss named "Elsie."

Cattle tested for Bang's Disease are required to have ear tags. Although there is some dispute in the record as to what number was on Elsie's ear tag, claimant was positive that she was tested on both dates, and that she was tested by Dr. Ruck after claimant arrived at the barn.

Although two tests for Bang's Disease within sixty days do not endanger or hurt cattle, when Dr. Ruck learned of the previous test, he apparently hurried through the testing of the other cattle, one of which was Elsie.

Within a day or so, Elsie developed a severe swelling on her neck extending from her mouth to her brisket. The center of this swelling was the point at which Dr.

Ruck inserted the blood needle. On May 2, 1949, Elsie died.

Dr. Kruger, who had been called by claimant to treat Elsie, arrived shortly after her death. He testified at the hearing before Commissioner Wise, without objection, that her death was due to a malignant edema, which resulted from the insertion of the blood needle without the taking of the proper sanitary precautions by Dr. Ruck.

The foregoing facts make out a case of negligence for which respondent is liable under Section 8(c) of the Court of Claims Act.

The evidence as to the value of Elsie is undisputed, and shows that she was worth $375.00.

An award is, therefore, entered in favor of claimant, James M. Carter, for the sum of $375.00.